[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Both parties appeared and were represented by counsel. All statutory stays having expired, the court has jurisdiction.
Having heard the evidence, the court finds as follows:
The plaintiff and defendant, whose maiden name was Willig, intermarried at University Park, Pennsylvania on August 19, 1979; that the plaintiff has resided continuously in Connecticut for a period of one year next preceding the date of the filing of this complaint; that there were no minor children issue of the marriage; that there were no other minor children born to the plaintiff since the date of the marriage of the parties; that the marriage has broken down irretrievably and that there is no hope of reconciliation.
Plaintiff testified that the breakdown of the marriage resulted from the defendant's refusal to move to whatever area the plaintiff, who was in the U.S. Navy, was assigned to; that defendant never wanted children; that although defendant handled the money, their debts became excessive and defendant ignored plaintiffs complaints about overspending. CT Page 13190
Plaintiff attributed the excessive debts to defendant's involvement with kennel clubs, raising German Shepherds and her interest in sheep herding and competition for ribbons. At one time, defendant had about 60 sheep and many dogs. Presently however, she has no sheep and only five German Shepards.
Although defendant was somewhat successful in obtaining ribbons, her hobbies were expensive.
The defendant denied plaintiff's claims. She testified that the plaintiff was very supportive of her involvement with the dogs, sheep and her involvement in competing for ribbons; that he bragged about her accomplishments that she followed the plaintiff wherever he was assigned but stopped doing so after 12 years; that she did want children but had a miscarriage; that she told the plaintiff about the miscarriage after he was assigned to Washington, D.C.; that she did not go to Washington with the defendant because he failed to get a rental for her; that plaintiff became involved with another woman while he was stationed in Washington, D.C. and that in November 1997 plaintiff was cold, distant, impotent and not interested in sex.
The plaintiff filed for divorce in March 1998 and has had little to do with defendant since.
Based on the parties' testimony, it is clear that the marriage has broken down irretrievably. I find the plaintiff more at fault for the breakdown than the defendant.
The plaintiff, who was born March 12, 1956, appears to be in good health. He is presently a Commander in the United States Navy. He has a vested Navy pension and would receive $592.00 per week if he retired now. However, his pension benefits will increase as he continues his service in the Navy.
Presently plaintiff receives an annual base pay of $61,464.00 plus $12,000.00 allowance, $1,800.00 assistance and submarine pay of $7,140.00 per year for a total yearly income of $82,332.00. In addition, he recently received a $15,000.00 bonus and will receive said amount each year for the next two years.
The defendant, who was born February 11, 1956, appears to be in good health. She attained a B.S. degree in management from Penn State but has not been employed in that field. Instead she CT Page 13191 had been employed at a veterinarian clinic from 1979 to 1996. She is now employed at Eastern Connecticut State University where she goes to school to obtain a teacher's certificate. She hopes to graduate in 2001 and obtain a teacher's position earning about $32,000.00 per year. Presently, she works at Eastern Connecticut State University, 24 hours per week and has a gross weekly income of $240.00. Her net weekly income is $182.00.
Defendant also is eligible for full medical, dental and health benefits and base privileges for her lifetime.
The parties own a marital home located at 88 Kinne Road, Canterbury, Connecticut, that they purchased for $142,500.00. The defendant's parents advanced $20,000.00 towards the purchase of the home.
The agreed present value of the home is $115,000.00. It is subject to a mortgage of about $98,000.00. The parties also own real estate located at 111 Ewell Court, South Carolina presently valued at $73,000.00. It is subject to a mortgage of $55,184.00.
The parties vacated the South Carolina property in 1996 and began to rent it. Because the parties took total depreciation of $43,292.94, the projected capital gain on a sale of the property would be $10,400.00. Therefore, the net realized after a sale and payment of commissions and taxes would be less than $7,000.00.
The parties each have an IRA valued at $59,562.00. The defendant also has stocks she received from her parents. The present value is $19,052.00. Plaintiff wants one half of these stocks. The remaining assets of the parties will be set forth in the orders set forth below.
In light of the evidence and my findings, judgment is entered dissolving the marriage of the parties on the grounds of irretrievable breakdown. After considering Connecticut General Statutes §§ 46b-61, 62, 82 and 84 and the demands of the parties, it is ordered that:
1. The plaintiff shall transfer to the defendant all of his right, title and interest in the marital residence located at 88 Kmnne Road, Canterbury, Connecticut. Defendant shall pay the mortgage, taxes, insurance and all expenses of ownership and hold the plaintiff harmless therefrom. CT Page 13192
2. The defendant shall transfer to the plaintiff all her right, title and interest in the real estate located at 111 Ewell Court, South Carolina. The plaintiff shall pay the mortgage, taxes, insurances and all expenses of ownership.
Each shall make reasonable efforts to get the other party released from the mortgages on their respective properties.
3. The defendant shall keep all her dog crates and kennel runs, the flatbed trailer, the 1988 Suburban, all the stock she received from her parents, her IRA, her insurance policies, air compressor, porcelain statute of Don Quixote, bank accounts, tractor, trailer, miscellaneous household goods and her 1991 Subaru Locale free of any claim by the plaintiff.
4. The plaintiff shall keep his bank accounts, his IRA, the 1991 Ford Suburban; his personal papers, his insurance policies, his hand tools, the circular saw, saber saw and drill.
5. The plaintiff shall pay to the defendant alimony of $500 per week for a period of two years, then $400 a week for two years and then $300 per week for 6 years. Said alimony is modifiable as to amount but not as to duration. The alimony shall terminate on defendant's death, remarriage or cohabitation with an unrelated male, whichever is the first to occur.
6. The plaintiff shall name the defendant as beneficiary on his $100,000.00 SGLI life insurance for as long as he has an alimony obligation to the defendant.
7. The plaintiff shall transfer to the defendant by way of QDRO, or equivalent method, 50% of the present value of plaintiff's Navy pension, namely $296 per week, and shall also provide the defendant with a survivor benefit package relative to said pension.
8. The plaintiff shall pay all the parties' joint debts without any contribution from the defendant.
9. Each party shall pay their own attorney's fees.
Vasington, JTR CT Page 13193